UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMBER TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: 2:18-cv-01609-JEO |
| JEFFERSON COUNTY | ) |
| COMMISSION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Amber Turner brings a claim for relief stemming from an alleged violation of her rights under Title VII of the Civil Rights Act of 1964 against Defendant Personnel Board of Jefferson County ("the Personnel Board"), Cooper Green Mercy Health Services, Barry Hudson, Armika Berkley, Roger McCullough, and Anna Elizabeth Hill. (Doc. 3).[1] Currently before the court[2] is the motion to dismiss filed by the Personnel Board. (Doc 7). The motion has been fully briefed, (docs. 34, 36), and is now ripe for decision. Also before the court is a motion to stay discovery that was filed by the Personnel Board. (Doc. 42). For the

---

[1] References to "Doc(s). ___" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk.

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 21).

following reasons, the court concludes that the motion to dismiss is due to be granted and the motion to stay is moot.

## I. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) authorizes a motion to dismiss claims in a complaint on the ground that the allegations fail to state a claim upon which relief can be granted. On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v City of North Miami,* 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). The court assumes the factual allegations in the complaint are true and gives the Plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC,* 551 F.3d 1223, 1224 (11th Cir. 2008).

Rule 12(b)(6) is read in light of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to, "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v Gibson,* 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level…." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.,* its "factual content … allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 557).

## II. FACTUAL ALLEGATIONS[3]

Plaintiff is an African American female who was formerly employed as a clinical pharmacist at Cooper Green Mercy Hospital. (Doc. 3 ¶¶ 7, 16). She was hired as a clinical pharmacist in April 2016 via the civil service system administered by the Personnel Board. (*Id.* ¶¶ 15-17). Shortly after being hired in 2016, Plaintiff realized that she was one of only two African American clinical pharmacists employed there. (*Id.* ¶ 20). Approximately two weeks after she started work, Plaintiff and the other African American pharmacist were assigned to work in the oncology/chemo practice, after the Caucasian pharmacists refused. (*Id.* ¶¶

---

[3] The factual allegations contained in this section are based upon the well-pled factual allegations of the amended complaint, which, consistent with the applicable standard of review, are taken as true, drawing all reasonable inferences in Plaintiff's favor. Thus, these are the background facts for the purposes of the motion only; they may not be the actual facts.

3

22, 24, 26). Neither Plaintiff nor the other African American pharmacist were qualified to work with the chemotherapy drugs, unlike the other Caucasian pharmacists. (*Id*. ¶ 27). Plaintiff told her supervisor, Elizabeth Hill, that she did not want to work around potentially hazardous chemotherapy chemicals, that it was not safe for the patients to allow her to work with the drugs, and asked why they could not hire an as-needed oncology pharmacist to temporarily fill the position. (*Id*. ¶ 28).

A few hours later, Plaintiff spoke with Barry Hudson in personnel about the situation. (*Id*. ¶ 29). After this conversation, Hill "threatened Turner telling her she is a probationary employee and if she doesn't want to work in chemotherapy, they will get someone that will." (*Id*.). Plaintiff reiterated that she did not want to work in chemotherapy, she was not hired for that position, and that it was unsafe for patients. (*Id*. ¶ 30). Plaintiff suggested that Caucasian and African American pharmacists rotate to "ensure trained coverage," but Hill "did not follow up on this suggestion." (*Id*.).

At Hill's suggestion, Plaintiff again met with Hudson and raised the same issues on April 15, 2016. (*Id*. ¶¶ 31, 32). She questioned why the African American pharmacists were being "segregated" to this position. (Id. ¶ 32). Hudson threatened Plaintiff's job and told her that "'they' could place individuals

wherever they want." (*Id*. ¶ 33). After the meeting, Plaintiff continued to question the work assignment, but never received a response. (*Id*. ¶ 34).

On April 20, 2016, Plaintiff filed a complaint alleging race discrimination with the hospital's affirmative action officer. (*Id*. ¶ 35). There was an investigation during which the Receiver met with Hill and Roger McCullough, the director for Cooper Green. (*Id*. ¶ 36). On May 17, 2016, Plaintiff received a letter stating that her complaint "lacked merit and was closed." (*Id*.). That being said, neither Plaintiff nor the other African American pharmacist were required to fill the chemotherapy position thereafter. (*Id*.).

Sometime thereafter, Plaintiff "observed several items requiring management's attention involving timeclock fraud and the improper dispensing of scheduled narcotics." (*Id*. ¶ 37). She notified Hill, as well as a co-employee, regarding the improper dispensing of the scheduled narcotics in late September or early October 2016. (*Id*. ¶ 38). On October 18, 2016, she told management about the alleged time clock fraud. (*Id*. ¶ 39).

At the time of Plaintiff's six month point of her employment, while she was still in the probationary period, Plaintiff contends that Hill, Hudson, and McCullough decided that her employment should be terminated before the end of the probationary period because of her complaints. (*Id*. ¶¶ 40-43). Plaintiff alleges "they discussed how to document [her] file with evidence of poor performance,

5

even if untrue" with the purpose of providing sufficient basis for her termination. (*Id*. ¶¶ 44, 45). "Hill reached out to the Caucasian employees asking for incidents involving" Plaintiff. (*Id*. ¶ 47).

On October 24, 2016, Hill met with Plaintiff "to retroactively discipline her" for multiple issues. (*Id*. ¶ 52). Plaintiff disputes the issues as presented by Hill. (*Id*. ¶¶ 53-54). "These false allegations prompted [Plaintiff] to file a second complaint with the Office of the Affirmative Action Officers on October 28, 2016, wherein she alleged race discrimination and that her October 24, 2016 discipline was retaliation based on her first complaint of race discrimination." (*Id*. ¶ 55).

During the coming months, Hill continued to "solicit[] reasons to discipline" Plaintiff as part of a plan to terminate her employment before the probationary period ended. (*See id*. ¶¶ 56-65). Plaintiff alleges that two "write-ups" were drafted but were never given to Plaintiff. (*Id*.). Then, on February 7, 2017, McCullough and Hudson "pulled Turner into a closed door meeting and verbally disciplined[4] her regarding insubordination, respect," and discussed a particular incident with a co-employee. (*Id*. ¶ 67).

Turner then filed her third complaint with the Office of the Affirmative Action Officer where she again alleged race discrimination and retaliation. (*Id*. ¶

---

[4] McCullough sent a letter to Plaintiff on February 14, 2017, documenting "his recollection" of the meeting. (Doc. 3 ¶ 75).

74). That same day, Plaintiff alleges she was disciplined for her approved modified work schedule. (*Id*. ¶¶ 76-81).

On March 13, 2017, Turner filed a charge with the EEOC alleging race discrimination and retaliation.[5] (*Id*. ¶ 82). Three days later she filed her fourth complaint with the Office of the Affirmative Action Officers regarding the same. (*Id*.). Then, on May 18, 2017,[6] Plaintiff filed a grievance with the Personnel Board "incorporating each of her former complaints of race-based discrimination and related retaliation . . . ."[7] (*Id*. ¶ 84). The Personnel Board "ignored her complaints or retaliation, suppression and disparate treatment" and "closed her case" on July 27, 2017, "alleging she had failed to show she had been adversely affected." (*Id*. ¶ 86). Plaintiff appealed the decision, but the Personnel Board upheld its previous determination. (*Id*. ¶ 89).

On approximately October 12, 2017, Hill was made aware of Plaintiff's EEOC charge. (*Id*. ¶ 91). Hill informed Plaintiff that "she did not want to involve the county and that she preferred the matter be handled internally." (*Id*. ¶ 93). Hill went to her supervisors and "admitted . . . that Turner's allegations were true." (*Id*. ¶ 95). Hill issued a formal apology to Plaintiff and agreed to undergo the

---

[5] Plaintiff alleges the EEOC sent her charge to the wrong party, (*id*. ¶ 85), but does not identify to whom it was sent.

[6] The amended complaint states the grievance was filed on in on May 18, 2018. (Doc. # 3 ¶84). Considering the chronology of events in the amended complaint, the court assumes this date was in error.

[7] She also included her complaints related to patient safety, untrained chemotherapy pharmacists, timeclock fraud, and improper dispensing of scheduled narcotics. (*Id*.).

7

Personnel Board Leadership Certification process. (*Id*. ¶¶ 97-98). Additionally, on October 17, 2017, Hill offered Plaintiff the position of pharmacy supervisor/lead, which included a pay raise, and Plaintiff accepted. (*Id*. ¶¶ 100, 102-03).

In the meantime, Hill attempted to submit a position statement to the EEOC and schedule a mediation. (*Id*. ¶ 104). However, the mediation was canceled because Hill and her supervisors did not have authority to settle. (*Id*. ¶ 105). After the cancellation, Hill submitted the promotion to the county and/or the Personnel Board. (*Id*. ¶ 106). The promotion was approved. (*Id*.).

Another EEOC mediation was scheduled with the county attorney present, but was unsuccessful. (*Id*. ¶¶ 107, 108). After Plaintiff's "refusal to settle her EEOC charge," Plaintiff alleges she was retaliated against on the orders of the county attorney with multiple writeups being levied upon her that had been previously written by her supervisors but never put in her file. (*Id*. ¶¶ 109, 110). Additionally, Plaintiff contends that either the county on their own, or in conjunction with the Personnel Board, denied her the pay raise that went with her promotion which essentially denied her the promotion all together. (*Id*. ¶¶ 111, 114).

## III. DISCUSSION

The Personnel Board makes two arguments in support of its motion to dismiss. (Doc. 7). First, the Personnel Board contends that it cannot be liable

under Title VII for the allegations contained in the amended complaint because it is not Plaintiff's employer. (*Id*. ¶ 2). Second, the Personnel Board argues that the amended complaint is due to be dismissed against it because the Personnel Board was not named in the EEOC complaint. (*Id*. ¶ 3). The court agrees with both alternative arguments.

### A. The Personnel Board of Jefferson County is not Plaintiff's employer under Title VII.

Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against any of its employees on the basis of their race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e-2, 2000e-3(a). With a very small number of exceptions, this means that a person can only assert this claim against their own employer. The Personnel Board argues that it is not Plaintiff's employer. In response, Plaintiff seems to admit that the Personnel Board is not her actual employer (*see* doc. 3 ¶ 7; doc. 34), but argues that "a liberal construction must be accorded to the term employer under Title VII." (Doc. 34 at 1, 3-4).

In support of her position, Plaintiff points to a small number of cases where non-employers were found to be employers for Title VII purposes. (*Id*. at 3-4). These cases, however, do not apply to the facts at hand. Instead, these cases involve facts where the non-employer controls, or has interfered with, an individual's employment relationship with a third party. Courts have found such relationships most often with cases involving temp agencies, medical residencies,

or other methods of employment where a person works for someone that places them in a location where their day to day work lives are controlled by someone else. *See Virgo v. Riviera Beach Associates,* 30 F.3d 1350, 1359-60 (11th Cir. 1994); *Zaklama v Mt. Sinai Medical Center,* 842 F.2d 291, 294 (11th Cir. 1988); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933-34 (11th Cir. 1987); *Jones v. Hamic*, 875 F. Supp. 2d 1334, 1351 (M.D. Ala. 2012) (under FLSA).

More specifically, courts look at three factors to determine whether a non-employer can be deemed an employer: "[1] whether or not the employment took place on the premises of the alleged employer; [2] how much control did the alleged employer exert on the employees; and, [3] did the alleged employer have the power to fire, hire, or modify the employment condition of the employees?" *See Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995) (under the Equal Pay Act). Applying these three factors to the facts alleged in the amended complaint results in a conclusion that the Personnel Board is not Plaintiff's employer.

In evaluating this defense, it is necessary to understand the role and function of the Personnel Board. The Board is an independent governmental entity created pursuant to legislation originally enacted by the Alabama Legislature in 1935, reenacted in 1945, and generally referred to as either "the Enabling Act" or "Act

No. 248."[8] It was created to administer civil service in Jefferson County, and is the principal civil service agency for public employees with twenty-two "appointing authorities"[9] served by the Board.[10] The authority and scope of the Board's power is set out in the Rules and Regulations of the PBJC ("Board Rules"). (*See* Doc. 36-1).

First, as to the location of the employment, Plaintiff did not work on the Personnel Board's premises. She worked at the Birmingham location of Cooper Green Mercy Health Services. Second, as to control over Plaintiff's employment activities, the Amended Complaint does not allege that the Board had any control over her day-to-day activities. Third, as regards the power to hire, fire, or modify employment, the Board only has the authority to review grievances and render

---

[8] *See* Act No. 248, 1945 Acts of Alabama, at 376-400; Act No. 284, 1935 Acts of Alabama, at 691-713; see also 1940 Code of Alabama, Appendix § 645 et seq. (Recomp. 1958). It is not a division or subdivision of the State of Alabama, the Jefferson County Commission, or any Jefferson County municipality. Id. The original 1935 Act and 1945 re-enactment were so-called "general acts of local application," meaning that the legislation applied only to Alabama counties and municipalities that satisfied population requirements specified in the statute. As a result of the population figures of 200,000 residents specified in the 1935 Act, and 400,000 residents in the 1945 Act, the enabling legislation has applied since its inception only to Jefferson County, the largest county in Alabama. See Act No. 248, 1945 Acts of Alabama § 2, at 377. Various sections of the enabling legislation have been amended many times during the intervening years.

[9] The Act defines the terms "appointing authority" or "appointing Power" as meaning a "person, officer, board, council, commission or other body including the County Board of Health whose lawful jurisdiction or powers are confined wholly or primarily within the territorial limits of such county and who or which possesses final power to appoint persons to services, jobs, offices or positions, the compensation of which is paid in whole or in part from the public funds of such county or from the public funds of a municipality in such county subject to this Act. . . ." Act No. 248, 1945 Acts of Alabama, § 1, at 376-77.

[10] The appointing authorities served by the Personnel Board include: the Jefferson County Commission; the Jefferson County Department of Health; the Jefferson County Emergency Management Agency; the General Retirement System for Employees of Jefferson County; the Jefferson County Personnel Board as an entity; and the cities of Birmingham, Bessemer, Centerpoint, Fairfield, Fultondale, Gardendale, Homewood, Hueytown, Irondale, Leeds, Midfield, Mountain Brook, Pleasant Grove, Tarrant, Trussville, Vestavia Hills, and Warrior. (Doc. 36 at 2, n.3).

decisions based on the recommendation of a hearing officer. (Doc. 36-1 at 67 (Rule 15)). It does not hire, fire, or otherwise control her employment.

In sum, the court finds that the Personnel Board and the Jefferson County Commission are legally separate entities. The only allegations regarding the Personnel Board in the amended complaint is that it denied Plaintiff's grievance and then upheld that decision when she appealed. As such, the Personnel Board cannot be deemed to be her employer for the purposes of Title VII. The motion to dismiss, therefore, is due to be granted.

**B. The Personnel Board was not named in the EEOC charge**

A prerequisite to suit under Title VII is the filing of an EEOC charge and the issuance of a "right to sue" letter from the EEOC. *See* U.S.C. § 2000e-5(e). As a general rule, "[a] party not named in an EEOC charge may not be sued under Title VII." *Way v. Mueller Brass Co.,* 840 F.2d 303, 307 (5th Cir.1988). The reason for this is that the, "naming precondition serves to notify the charged part of the allegation and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." *Lewis v Asplundh Tree Expert Co.,* 402 F. App'x 454, 456 (11th Cir. 2010).

Plaintiff admits that she did not name the defendant in her E.O.C.C. charge, but contends that it was not required because the purposes of Title VII are fulfilled. (Doc. 34 at 6). The court disagrees. *Virgo v. Riviera Beach Associates* provides a

list of criteria to determine if the purpose of Title VII has been met to allow an unnamed defendant to be sued under Title VII:

> [T]o determine whether the purposes of Title VII are met, courts do not apply a rigid test but instead look to several factors including: (1) the similarity of interest between the named party and the unnamed party; (2) whether the Plaintiff could've ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party was actually prejudiced by its exclusion from the EEOC proceedings.

30 F.3d at 1358-59 (citations omitted).

Applying these criteria here, the court finds that allowing the plaintiff to sue the Personnel Board without naming them in her EEOC charge does not further the purpose of Title VII. In fact, none of the *Virgo* standards apply favorably to Plaintiff. First, there is no similarity in interest between the Personnel Board and the county. They are completely separate entities and have no ties to one another. Second, Plaintiff could have easily ascertained the Defendant's identity before filing her charge. She dealt with them directly by filing her complaint and knew who and what they were. Third, the Personnel Board didn't receive adequate notice of a charge against them. The fact that it may have been aware of a charge against the county is of no consequence. *See Lewis,* 402 F. App'x at 457. Finally, the county was allowed to participate in the EEOC reconciliation process, but the

Personnel board was not. That lack of participation in the process results in prejudice to the Personnel Board.

The court rejects Plaintiff argument that the Personnel Board is likely to be uncovered as a liable party during an EEOC investigation. This argument is pure speculation on the part of Plaintiff. The EEOC investigation has concluded with the right to sue letter being issued, and there is nothing in the amended complaint alleging that the Personnel Board was mentioned in that investigation. The charge itself only mentions the "Jefferson County Commission Health System Pharmacy" and only details the actions of her immediate supervisor. (Doc. 25-1). There is no mention of the Personnel Board, their conduct, or their employees anywhere in the EEO charge. (*Id*.). What is mentioned in the amended complaint, however, is that the only people present at the reconciliation process were representatives of the county. (Doc. 3 ¶¶ 104-108). There is no allegation that the Personnel Board was even contacted by the EEOC throughout the process. Because the Personnel Board was not named in the EEOC charge and the Plaintiff has not satisfied any of the exceptions to the rule, the court finds Plaintiff has failed to exhaust her administrative remedies with regard to this Defendant. The motion to dismiss is due to be granted for this separate, alternative reason.

## IV.  CONCLUSION

For the foregoing reasons, the motion to dismiss is due to be granted. The motion to stay is moot in view of the court's ruling on the motion to dismiss. A separate order will be entered dismissing the Personnel Board.

**DATED** this 11th day of June, 2019.

*John E. Ott*
_____
**JOHN E. OTT**
Chief United States Magistrate Judge